

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                   Criminal No. 3:08CR32

FREDERICK J. SMITH

## MEMORANDUM OPINION

Frederick J. Smith, a federal inmate proceeding _pro se_, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. ("2255 Motion.")  In his rambling and conclusory submission, Smith raises the following claims for relief:[1]

| | |
|---|---|
| Claim One: | The Government violated Smith's Sixth Amendment[2] right to a speedy trial. |
| Claim Two: | The Government denied Smith due process[3] "[b]y . . . Government's failure to assure authenticity of information offered by State of Virginia officers before agreeing to removal . . . from state to federal jurisdiction." (Mem. Supp. § 2255 Mot. 3, ECF No. 56.) |
| Claim Three: | "The federal Government did not have lawful jurisdiction [o]ver this matter." (_Id._) |

---

[1] The Court corrects the capitalization in quotations from Smith's Memorandum in Support of 28 U.S.C. § 2255 Motion.

[2] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

[3] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

Claim Four:       The Government violated Smith's "4th
                  Amendment[4] protection against an illegal
                  seizure." (Id.)

Claim Five:       The Government denied Smith due process by
                  "failure to conduct the investigation of
                  facts necessary to confirm the veracity of
                  state police information before proceeding
                  to trial." (Id. at 5.)

Claim Six:        The Government violated Smith's Sixth
                  Amendment right to a fair trial. (Id. at
                  6.)

Claim Seven:      The Government denied Smith due process "by
                  the use of perjury to secure a conviction."
                  (Id. at 9.)

Claim Eight:      Counsel rendered ineffective assistance by:
                  (a)  failing to obtain certain records
                       that would demonstrate the
                       Government was not credible (id.
                       at 17-18);
                  (b)  stipulating to the chain of
                       custody for the lab testing of the
                       marijuana (id. at 18);
                  (c)  failing to file certain pretrial
                       motions (id. at 18-19);
                  (d)  "usurp[ing Smith's] right to
                       testify" (id. at 19);
                  (e)  "refus[ing] to examine the
                       petitioner (id.);
                  (f)  refusing to remove an "obviously
                       partial juror from the jury, or
                       declare a mistrial" (id.);
                  (g)  failing to object to "Judge
                       Williams's conduct" that
                       "motivate[ed] the juror . . . to
                       silence her expressions of
                       partiality" (id.);
                  (h)  apologizing to the jury (id. at
                       19-20);

---

[4] "The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated . . . ." U.S. Const. amend. IV.

                              (i)   refusing to object to certain Government statements (id. at 20);
                              (j)   giving weight to the Government's case (id. at 20-21);
                              (k)   telling the jury to ignore Smith's testimony (id. at 21).

Claim Nine:     Smith was denied due process by lack of meaningful appellate review due to errors in the transcript.  (Id. at 22.)

The Government has responded.  Smith has replied.  The matter is ripe for disposition.

## I.   FACTUAL AND PROCEDURAL HISTORY

On January 24, 2008, a grand jury charged Smith with possession with intent to distribute marijuana (Count One), possession of a firearm in furtherance of a drug trafficking crime (Count Two), and possession of a firearm by a convicted felon (Count Three).  (Indictment 1-2, ECF No. 1.)[5]  At the time of the federal indictment, Smith was serving an active term of state imprisonment at the Riverside Regional Jail.  On January 28, 2008, a federal agent filed a detainer with the Riverside Regional Jail notifying Smith of the issuance of a federal arrest warrant against him.  (Mem. Supp. § 2255 Mot. App'x A, at 1.)

---

[5] The Indictment stemmed from an October 23, 2005 high speed chase which resulted in the recovery of marijuana and a firearm in the vehicle driven by Smith.

On October 28, 2008, Smith first appeared in Court for his arraignment. (Minute Entry 1, ECF No. 7.) Although the Court appointed Smith counsel,[6] beginning with his initial appearance, Smith barraged the Court with frivolous pro se filings during the criminal proceedings despite the Court's repeated warnings that he must confer with counsel about any issues he wished to raise. (See e.g., ECF Nos. 9-12, 14-17, 30-31.) On December 30, 2008, on the motion of the Government, the Court dismissed Count Three. (Order 1, ECF No. 26.) The Court held Smith's jury trial on January 5, 2009.

The evidence at trial demonstrated that two officers with the Petersburg police department observed a vehicle traveling at a high rate of speed in an evasive manner in a high crime area around 3:30 a.m. on October 23, 2005. (Jan. 5, 2009 Tr. 37-39, 68, 87.) The officers followed the vehicle and observed it run a stop sign. (Jan. 5, 2009 Tr. 39.) The officers activated the blue lights. (Jan. 5, 2009 Tr. 39.) Eventually, the car pulled over a few blocks away. (Jan. 5, 2009 Tr. 39, 88.) One officer approached the car on the passenger side, noted that the passenger-side window was rolled down and only the driver occupied the car, and "observed a gallon bag of marijuana with a

---

[6] Robert Wagner and co-counsel Cristin Traylor represented Smith. (Jan. 5, 2009 Tr. 2.) The majority of Smith's ineffective assistance claims are raised against Wagner. Thus, the Court refers to lead counsel Wagner as "counsel" and refers to Traylor as "Traylor."

4

pistol laying on top of the marijuana [o]n the floorboard." (Jan. 5, 2009 Tr. 40-42.) The officer explained that "[b]oth the marijuana and the pistol were in plain view." (Jan. 5, 2009 Tr. 42.) Smith provided the officer with license and registration. (Jan. 5, 2009 Tr. 42.) The officer asked him to cut the car off, and instead, Smith "jerked it in to drive and took off at a high rate of speed." (Jan. 5, 2009 Tr. 42-43.)

After pursuing the car driven by Smith for approximately five minutes on residential roads at speeds up to 95 miles per hour, Petersburg police officers observed a cloud of dust in front of them and found the car wrecked. (Jan. 5, 2009 Tr. 46-48, 82, 89-90.) Officers found Smith, ejected from the vehicle approximately 150 to 200 feet away from the car, unconscious and bleeding from the head. (Jan. 5, 2009 Tr. 48, 67, 90-91, 104.) The vehicle's windows were "broken out." (Jan. 5, 2009 Tr. 114.) Smith suffered severe head injuries and remained in the hospital for twenty-eight days. (Jan. 5, 2009 Tr. 48, 67, 105, 182.) The officers searched the car and recovered the larger bag of marijuana, the firearm, and currency. They recovered marijuana from Smith's pants pocket. (Jan. 5, 2009 Tr. 49-50, 91-95, 109-10.)

Against the advice of counsel, Smith insisted on testifying. (Jan. 5, 2009 Tr. 160-63.) Smith testified, "I was not this [sic] driver of the vehicle [and t]here was no supposed

5

high-speed chase." (Jan. 5, 2009 Tr. 164.) Smith then explained his theory of police fabrication and fraud stemming from the officers' "ulterior motive to try and punish" him for a 1992 "violent crime" conviction that was "overturned" in 2001 after they learned Smith's identity. (Jan. 5, 2009 Tr. 165.)

Smith further provided a vague account of the night, stating that he had been a passenger in a different vehicle involved in a different accident, and that this vehicle was neither stopped by police nor involved in a high speed chase. (Jan. 5, 2009 Tr. 175, 181.) Smith explained that he had no idea where the car in which he had been a passenger was headed before the wreck, because he "ended up succumbing to the alcohol" but nevertheless insisted that he "[had] memory" of the night's events. (Jan. 5, 2009 Tr. 180-81.) Smith testified that he "was not suffering from any type of serious injuries that would suggest that I was thrown 150 feet to 200 feet from the car," but that he "was suffering from some sort of road rash . . . [which] shows that [he] was dragged away from the car." (Jan. 5, 2009 Tr. 175). Just minutes later, however, Smith agreed that he suffered severe head and spine injuries. (Jan. 5, 2009 Tr. 182.)

In an effort to recover from Smith's rather incredible testimony, in his closing argument, counsel explained that

> Now, you have heard the defendant's testimony in
> this case.   And, frankly, I am troubled by his
> testimony.   I think what you have heard is a man who
> is confused and who is frustrated.   And a man who
> suffered a serious head [in]jury.   And I ask that you
> ignore his testimony, but certainly focus in on the
> government's testimony.   What has the government
> proven, and what through the defendant's testimony
> makes that evidence any stronger or any more
> persuasive?   So let's focus on the government's
> evidence here . . . .

(Jan. 5, 2009 Tr. 201.)

A jury subsequently found Smith guilty of both Counts One and Two.   (Verdict 1, ECF No. 28.)   The Court sentenced Smith to seventy-two months of imprisonment.   (J. 2, ECF No. 34.)   The United States Court of Appeals for the Fourth Circuit affirmed his convictions.   United States v. Smith, 357 F. App'x 555, 558 (4th Cir. 2009).   On October 4, 2010, the United States Supreme Court denied Smith's petition for a writ of certiorari.   Smith v. United States, 131 S. Ct. 189 (2010).

## II.   CLAIMS BARRED FROM REVIEW

First, to the extent that Smith attempts to challenge the sufficiency of the evidence to convict him of possession of intent to distribute marijuana and possession of a firearm in furtherance of a drug trafficking crime, the Fourth Circuit rejected his challenge on direct review.   United States v. Smith, 357 F. App'x 555, 558 (4th Cir. 2009).   Smith fails to direct the Court to an intervening change in the law that would

permit Smith to re-litigate these claims.  See United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).  Thus, the Fourth Circuit's ruling bars collateral review of any challenge to the sufficiency of the evidence.  Linder, 552 F.3d at 396-97.

Second, the procedural default rule bars Claims One through Seven from review here, absent a showing of cause and prejudice or actual innocence, because Smith could have raised, but did not raise, these claims on direct appeal.  See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982).  Smith fails to show cause and prejudice or actual innocence.  Accordingly, Claims One through Seven will be dismissed.[7]

In Claim Nine, Smith argues that the trial record and transcripts "[were] seriously altered" thus depriving the Fourth Circuit of a fair review of Smith's case on appeal.  Smith has previously raised and this Court rejected Smith's claims alleging errors and omissions in the trial record.  See United States v. Smith, 3:08CR32, at 1-3 (E.D. Va. Apr. 8, 2013) (ECF

---

[7] The majority of Smith's claims are also conclusory and thus, fail to state claims for relief.  See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").  For example, in Claims Two and Five, Smith faults federal agents and the Government for failing "to investigate the facts," but provides no facts to support his claim.  (See Mem. Supp. § 2255 Mot. 3, 5-6.)

No. 66). The Fourth Circuit affirmed. United States v. Smith, 546 F. App'x 195, 195-96 (4th Cir. 2013). Smith fails to identify a procedural vehicle that would allow the Court to revisit its prior determination. Claim Nine will be dismissed.

### III. ALLEGED INEFFECTIVE ASSISTANCE

In Claim Eight, Smith faults counsel for a litany of errors stemming from Smith's continued belief that his counsel failed to put forth adequately Smith's fanciful account of the events leading to his arrest and his theory of fraud. Smith fails to demonstrate any deficiency of counsel or resulting prejudice.

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

9

is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### A. Claim Eight (a)

In Claim Eight (a), Smith faults counsel for failing to "conduct the investigations of available avenues of information," to support Smith's theory that the officers fabricated the events leading to his arrest. (Mem. Supp. § 2255 Mot. 17.) Smith believes that counsel should have obtained a "dispatch audio recording" and the "three magistrates' reports," to demonstrate that the officers falsified the car wreck and never saw marijuana or the gun in his car. (Id. at 17-18.) He also faults counsel for failing to obtain the lab report for the drugs which would have shown "how the drugs were untimely submitted for testing" and for failing to obtain his hospital records that "petitioner's injuries did not coincide with the government's proffer of the petitioner having been thrown 150-200 feet from the vehicle." (Id. at 18.) Given that Smith has tendered no evidence (as opposed to conclusory assertions) that any of the documents that he mentions would have helped his case, the Court concludes that counsel reasonably eschewed pursuing these documents, or advancing Smith's inherently

10

inconsistent and unsupported theory of police fraud.    In light of the overwhelming evidence of his guilt, Smith also fails to demonstrate that, but for counsel's errors in failing to obtain the reports, a reasonable probability exists that the jury would have found Smith not guilty.    Claim Eight (a) lacks merit and will be dismissed.

### B.    Claim Eight (b)

In   Claim   Eight   (b),   Smith   next   argues   that   counsel deficiently "reliev[ed] the government of its burden of proving a   reliable   chain   of   custody"   for   the   marijuana   when   he stipulated to proof of chain of custody.    (Id.; see Dec. 5, 2009 Tr. 119.)    Smith fails to proffer any evidence suggesting that the marijuana admitted at trial was not the marijuana in his vehicle.    In   light   of   the   overwhelming   evidence   that   the marijuana came from the car driven by Smith, counsel made a reasonable tactical decision to stipulate to chain of custody of the   marijuana.    Smith   also   fails   to   demonstrate   how   he   was prejudiced   by   counsel's   action.    Claim   Eight   (b)   will   be dismissed.

### C.    Claim Eight (c)

In Claim Eight (c), Smith faults counsel for failing to "present   meritorious   challenge[s]   against   the   procedural unfairness of these criminal proceedings," and lists, in a conclusory manner, the following motions that counsel should

11

have filed:  (1) a challenge to the "removal" of the proceedings
to federal court; (2) a motion raising the purported speedy
trial violation; (3) a motion to suppress "unlawful evidence;"
and, (4) a motion challenging "defects" in the proceedings.
(Mem. Supp. § 2255 Mot. 18-19.)

### 1.   Removal Of Proceedings

First, Smith faults counsel for failing to challenge "the
removal of criminal proceedings from state to federal
jurisdiction with untimely enhanced arrest warrants."  (Id. at
19.)  Smith fails to demonstrate a sufficient factual basis to
support this claim.  At the time the federal grand jury indicted
Smith in 2008, Smith was serving a sentence for convictions
imposed on June 21, 2007, in the Circuit Court of the City of
Chesterfield for possession of cocaine with intent to
distribute, possession of a firearm while in possession of
cocaine with intent to distribute, obstruction of justice,
possession of marijuana, and possession of a concealed weapon.
See Smith v. Virginia, No. 3:12CV148, 2013 WL 871519, at *1
(E.D. Va. Mar. 8, 2013).  In his Memorandum, Smith explains that
"[t]hose criminal proceedings stem from petitioner's April 1,
2006 arrest . . . ."  (Mem. Supp. § 2255 Mot. 2.)  Although the
state charged Smith with possession with intent to distribute
marijuana and use of a firearm for the October 23, 2005 events,
Smith fails to allege that the state convicted him of those

12

charges.   And, it appears that Smith was neither tried nor convicted in the state court.[8]   Moreover, Smith provides no cogent argument to support his contention that the federal Government lacked jurisdiction to charge him with these crimes. Thus, Smith fails to demonstrate any deficiency of counsel for failing to advance this unsupported claim, or resulting prejudice.

### 2.   Alleged Speedy Trial Violation

#### a.   Interstate Agreement On Detainers Act

Smith alleges that counsel was deficient for failing to move for dismissal of the Indictment based on a speedy trial violation and the Interstate Agreement on Detainers Act ("IADA"), 18 U.S.C. App'x. 2, § 2.  Counsel reasonably eschewed advancing Smith's speedy trial arguments.   Article III of the

---

[8] The Presentence Report ("PSR") explains the procedural history for the state and federal charges:

> Warrants for the defendant were obtained by Petersburg Police, however, the defendant was released from the hospital without the warrants being served.   In April 2006, the defendant was arrested in Chesterfield County and the Petersburg warrants were served on him at that time.   However, the charges related to this offense were Nolle Prossed in Petersburg, as the marijuana had not been sent to the laboratory for testing.   On November 20, 2007, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives signed for custody of the marijuana and transported it to the laboratory for analysis.

(PSR ¶ 14.)

Interstate Agreement on Detainers Act, provides, in relevant part:

> **(a)** Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . .

18 U.S.C. App'x 2 App. 2, Art. III(a). The one-hundred and eighty-day time period begins to run when the prisoner's "request for final disposition of the charges against him **has actually been delivered** to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." Fex v. Michigan, 507 U.S. 43, 51 (1993) (emphasis added). The inmate bears the burden of ensuring that prison officials send the demand. See id. at 49-51.

Smith contends that the federal agents lodged the detainer against him on January 28, 2008 however, he "was not brought to federal courts until October 28, 2008 to answer the instant charges." (Mem. Supp. § 2255 Mot. 2.) Smith states that "[u]pon being informed of the ATF detainer, [he] submitted two requests to the Riverside Regional Jail (see Appendix A) asking

the jail to notify the agency issuing the detainer of [his] request to proceed with trial." (Id.)[9] Despite Smith's characterization of these "requests" as notifying federal agents of his intent to proceed to trial, the inmate request forms Smith submitted show that as of April 3, 2008 and April 18, 2008, he sought to have the detainer "lifted ASAP" and to "resolve the matter." (Id. App'x G at 1.) Accordingly, while the record contains no evidence of the date upon which Smith actually delivered his request, Smith's own filings demonstrate that as of mid-April, Smith's request for final disposition of the charges against him had not yet been delivered to the court and the prosecuting officer of the jurisdiction that lodged the detainer against him. See Fex, 507 U.S. at 50-51. Thus, the one-hundred and eighty day period had not yet begun to run at that point. On the limited record, Smith fails to establish any deficiency of counsel for not arguing a violation of the IADA or any resulting prejudice.

---

[9] Appendix A fails to include copies of the requests. Instead, Appendix G contains two Riverside Regional Jail Inmate Request Forms. (Mem. Supp. § 2255 Mot. App'x G at 1.)

### b.   Alleged Denial Of Speedy Trial Under The Sixth Amendment And 18 U.S.C. § 3161(b)

Smith also faults counsel for failing to raise a speedy trial challenge and cites both the Sixth Amendment[10] and 18 U.S.C. § 3161(b).[11]  (Mem. Supp. § 2255 Mot. 2.)  Smith argues that a speedy trial violation occurred because of the lengthy delay between his arrest for state charges and the issuance of the federal indictment.  Smith claims:

> On April 1, 2006 petitioner was served with a different set of [state] warrants relating to the instant case.  However, a federal detainer was not lodged in pursuit of these federal proceedings until January 28, 2008.  Over 23 months after petitioner was served with arrest warrants from the October 23, 2005 incident.

(Mem. Supp. § 2255 Mot. 2.)

Counsel reasonably eschewed making a speedy trial motion under the Speedy Trial Act or the Sixth Amendment based on Smith's meritless claims of pre-indictment delay.

The Sixth Amendment's speedy trial protection is triggered only by "a formal indictment or information or else [by] the actual restraints imposed by arrest and holding to answer a criminal charge . . . ."  United States v. Marion, 404 U.S. 307,

---

[10] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend. VI.

[11] The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with . . . an offense shall be filed within thirty days from the date [of] arrest[ ] . . . ."  18 U.S.C. § 3161(b).

320 (1971); see United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995) (finding that a "defendant must show first that the [Sixth] Amendment's protections have been triggered by 'arrest, indictment, or other official accusation'" (quoting Doggett v. United States, 505 U.S. 647, 655 (1992))).  Similarly, the Speedy Trial Act is not implicated until a defendant "[is] either taken into federal custody on federal charges or indicted on those charges." Thomas, 55 F.3d at 148.  Thus, Smith had no entitlement to the Sixth Amendment's or Speedy Trial Act's protections until the federal grand jury charged Smith by indictment on January 24, 2008.

Smith seemingly suggests that because the state served a different set of warrants on Smith on April 1, 2006 and no federal detainer issued until January 28, 2008, the Government violated his speedy trial rights.  Contrary to Smith's assertion, an arrest on state charges fails to engage the speedy trial protections under the Speedy Trial Act or the Sixth Amendment for a subsequent federal charge.  See United States v. Taylor, 240 F.3d 425, 427-28 (4th Cir. 2001) (citations omitted) (explaining that "the time limits of the [Speedy Trial] Act begin only after a federal arrest, not a state arrest"); United States v. Garner, 32 F.3d 1305, 1309 (8th Cir. 1994) (citations omitted) ("arrest on state charges does not engage the [Sixth Amendment] speedy trial protection for a subsequent federal

17

charge"). Thus, Smith lacked entitlement to speedy trial protection under the Speedy Trial Act or the Sixth Amendment until his federal indictment on January 24, 2008. Smith makes no argument that any delay between January 24, 2008 and his eventual trial on January 5, 2009 violated the Sixth Amendment or the Speedy Trial Act. Accordingly, Smith fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to advance Smith's meritless speedy trial challenges under the Speedy Trial Act or Sixth Amendment.

### 3.    Motions To Suppress And For Defects

Smith also contends that counsel should have filed a motion to suppress "unlawful evidence" and a motion addressing "[d]efects in the institution of state and federal criminal proceedings." (Mem. Supp. § 2255 Mot. 19.) Smith provides no supporting argument or a factual basis for his claims. Smith also fails to identify, and the Court fails to discern, a meritorious basis upon which counsel could have filed these pretrial motions. Smith's conclusory allegations fail to state a claim for habeas relief. Sanders v. United States, 373 U.S. 1, 19 (1963). Accordingly, Claim Eight (c) lacks merit and will be dismissed.

### D.    Claims Eight (d), (e) and (k)

Smith next faults counsel for attempting to "usurp" his right to testify (Claim Eight (d)), for refusing to examine

18

Smith (Claim Eight (e)), and for telling the jury to ignore Smith's testimony (Claim Eight (k)). (Mem. Supp. § 2255 Mot. 19, 21.)

Trial counsel has the primary responsibility for advising a defendant of his right to testify and for explaining the tactical implications of testifying or not testifying. Sexton v. French, 163 F.3d 874, 881 (4th Cir. 1998). While an accused has a constitutional right to testify on his own behalf, the right is not unlimited, and does not include the right to testify falsely. United States v. Teague, 953 F.2d 1525, 1530-31 (11th Cir. 1992) (citing Nix v. Whiteside, 475 U.S. 157, 173 (1986).

Here, counsel explained to the Court that he and co-counsel had advised Smith of his right to testify, explained the ramifications of testifying, and advised Smith that testifying would not be in his best interest. (Jan. 5, 2009 Tr. 160.) Counsel made the Court aware of Smith's desire to testify, and the Court also advised Smith of his rights and the risks involved with Smith taking the stand. (Jan. 5, 2009 Tr. 160-62.) In light of Smith's palpably incredible, vague, and inherently inconsistent account of the events leading to his arrest, counsel prudently advised Smith against testifying. In light of Smith's insistence on testifying, counsel prudently brought to the Court's attention Smith's desire to testify.

19

(Jan. 5, 2009 Tr. 160.)    The Court then also advised Smith of his rights and the risks involved with taking the stand.    (Jan. 5, 2009 Tr. 160-62.)    After hearing both counsel's and the Court's warning, Smith chose to testify.    Smith fails to demonstrate any deficiency of counsel for Claim Eight (d).

To the extent that Smith faults counsel for not examining Smith, the Court, not counsel, provided the parameters for counsel's questioning of Smith.    (See Jan. 5, 2009 Tr. 162-63.) Counsel questioned Smith consistent with the Court's instructions and then Smith testified in narrative form.    Smith again shows no deficiency of counsel.    Smith also fails to demonstrate that, but for counsel's purported error, the jury would not have convicted him.    Claim Eight (e) will be dismissed.

Finally, counsel prudently asked the jury in his closing statement to ignore Smith's incredible testimony.    The Government put forth compelling evidence that the marijuana and firearm were in plain view in a car in which Smith was the only occupant, that Smith fled from police and led police on a dangerous high-speed chase that resulted in Smith totaling the car, and that police found Smith unconscious outside the wrecked car and recovered marijuana and a firearm.    In light of this evidence, the defense advanced a theory that Smith had no knowledge of the drugs on the floor of the vehicle because it

20

was dark and the evidence failed to demonstrate that the firearm was used in furtherance of drug trafficking. Smith's testimony that he was not the individual whom police stopped, that he never engaged in a high speed chase, that he had no involvement in the car wreck as described by police, and sustained no serious injuries, was incredible, and ran contrary to the defense theory. Counsel's closing statements attempted to salvage the defense theory by removing the jury's focus from Smith's testimony, reminding the jury that Smith suffered severe head injuries, and redirecting the jury's attention to the weaknesses in the Government's evidence.

Not only were counsel's actions eminently reasonable, but Smith again fails to demonstrate that, but for counsel's actions, the jury would not have found him guilty. Claim Eight (k) lacks merit and will be dismissed.

### E. Claims Eight (f) And (g)

In Claims Eight (f) and (g), Smith faults counsel for failing to move to remove a purportedly impartial juror and to object to the Court's "improper contact" with the juror. (Id. at 19.) Smith explains that counsel failed to "move the court into making note at least, or to more appropriately issue curative instructions and remove the obviously partial juror from the jury, or declare a mistrial." (Id.) Smith describes the improper "juror conduct as [follows:] the juror began to

smack her lips in expressions of disbelief during petitioner's attempt to explain Government witness inconsistencies and impeach the Government's case." (Id.) Smith also faults counsel for not objecting to the Court "walking from the bench in order to sit in the jury box, motivating the juror through this improper contact to silence her expressions of impartiality." (Id.)[12]

On the limited record before the Court, Smith fails to demonstrate any deficiency of counsel or resulting prejudice. The record establishes that each juror demonstrated that he or she was unbiased and could be impartial. (Jan. 5, 2009 Tr. 10-13.) Against counsel's reasoned advice, Smith insisted upon testifying and provided an inherently inconsistent and vague account of the events leading to his arrest. Smith's allegations describe a juror's reaction to Smith's incredible testimony and fail to demonstrate juror bias. Counsel reasonably eschewed seemingly endorsing Smith's testimony by objecting to a juror's reaction or the Court's attempts to quiet the juror. Moreover, in light of the overwhelming evidence of his guilt, Smith fails to demonstrate prejudice. Claims Eight (f) and (g) lack merit and will be dismissed.

---

[12] The record is silent as to whether the judge left the bench and walked to the jury box.

### G. Claim Eight (h)

In Claims Eight (h), Smith claims that in her opening statement, counsel Traylor "apologized to the jury" and agreed with the police's "perjured account," when she stated: "Even Mr. Smith thought that [the officer] should be coming to the driver's side. He was turned this way looking back." (Mem. Supp. § 2255 Mot. 19-20; see Jan. 5, 2009 Tr. 29-30.) Neither Smith's conclusory allegations nor the record supports a conclusion that counsel was deficient. Smith also fails to demonstrate that, but for any purported error of counsel, the result of the trial would have been different. Claim Eight (h) will be dismissed.

### H. Claim Eight (i)

In Claim Eight (i), Smith faults counsel for failing to object to the Government's alleged statement: "What kind of person would total a car that had just been purchased two weeks earlier by his sister?" (Mem. Supp. § 2255 Mot. 20.)[13] Smith fails to proffer the grounds upon which counsel should have objected, thus, he demonstrates no deficiency of counsel. Smith

---

[13] Smith claims that the "trial transcripts have been refashioned to pepper similar reference, omitting the intensity of this statement so as to reduce the appearance of the level of prejudice . . . ." (Mem. Supp. § 2255 Mot. 20.) A review of the record demonstrates that the Government, in closing, stated: "His sister's car that was bought two weeks ago is totaled. Why do you subject yourself to totaling your sister's car?" (Jan. 5, 2009 Tr. 193.)

23

also demonstrates no prejudice from counsel's failure to object in light of the overwhelming evidence of his guilt.

## I.   Claim Eight (j)

Finally, in Claim Eight (j), Smith contends that counsel repeatedly gave "weight" to the Government's case by not submitting the "police 'confidential supplements'" into evidence and "repeatedly portraying to the jury" that the supplements "were authentic and reliable police reports." (Mem. Supp. § 2255 Mot. 20.) Other than vaguely challenging the authenticity and reliability of the police reports, Smith fails to proffer what exculpatory evidence the reports contain, and fails to identify with specificity why he believes the reports to unreliable. See Sanders, 373 U.S. at 19; see United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory nature). Moreover, counsel used the reports for impeachment purposes to cast doubt on whether the officer observed the marijuana and firearm in the car when he first stopped Smith. (See, e.g., Jan. 5, 2009 Tr. 81-83.) Thus, the Court discerns no error from counsel's actions, nor any resulting prejudice. Claim Eight (j) lacks merit and will be dismissed.

## IV.   MOTION FOR DISCOVERY

A federal habeas petitioner must demonstrate good cause before he or she is allowed to conduct discovery. Stephens v.

24

Branker, 570 F.3d 198, 213 (4th Cir. 2009). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he [or she] is entitled to habeas corpus relief," once the facts are fully developed. Id. (citing Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)). Smith fails to make such a showing. Accordingly, Smith's discovery motion (ECF No. 60) will be denied.

## V.  CONCLUSION

For the foregoing reasons, Smith's claims will be dismissed. Smith's Motion for Discovery (ECF No. 60) will be denied. Smith's § 2255 Motion (ECF No. 55) will be denied and the action will be dismissed. A certificate of appealability ("COA") will be denied.[14]

The Clerk is directed to send a copy of this Memorandum Opinion to Smith and counsel of record.

/s/  _REP_

Robert E. Payne
Richmond, Virginia                Senior United States District Judge
Date:  June _16_, 2014

_____

[14] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA.  28 U.S.C. § 2253(c)(1)(B).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Smith fails to satisfy this requirement.